UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DIGITALDESK, INC. and
R. GREG GOMM,

     *Plaintiffs*,

v.                                   **Case No. 5:23-CV-0886-JKP-RBF**

BEXAR COUNTY, TEXAS, and
LIFTFUND INC.,

     *Defendants*.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is a Motion to Dismiss (ECF No. 16) filed by Defendants Bexar County, Texas, and Liftfund Inc. pursuant to Fed. R. Civ. P. 12(b)(1). With Plaintiffs' response (ECF No. 18), and Defendants' reply brief (ECF No. 19), the motion is ripe for ruling. After considering the motion, briefing, relevant matters of record, and the applicable law, the Court grants the motion.

## I. BACKGROUND

Plaintiffs, "a white male and his software company," commenced this case based on alleged unconstitutional and illegal unequal treatment. *See* Compl. (ECF No. 1) ¶¶ 1-3. This action concerns their application through the Bexar County Small Business Assistance Program which provided grants "to small businesses impacted by the pandemic." *Id*. ¶ 10. The Court will often refer to this grant program as "the Program." Plaintiffs applied for a grant on January 6, 2023. *Id*. ¶ 13.

As part of the evidence submitted with their motion, Defendants provide the submitted application. *See* ECF No. 16-1 (Ex. 1). On the first page of the online application in the "Getting Started" section, Plaintiffs were informed that (1) "Applicants without filed 2019 and 2020 business returns are not eligible"; (2) "All documents must be provided in order for the application to be considered complete"; and (3) "Please note that as you proceed with the application there will be guidance as to whether or not you will qualify for this program." *See id*. at 5. Within the

"Required Document Upload" section, the application process specifically asks for "filed business tax return[s]" for 2019, 2020, and 2021. *See id*. at 10. The "Disclaimer" section of the application states: "the applicant representing the business hereby testifies that the information provided in this application is true, current, complete and correct." *Id*. at 11. Plaintiff Gomm answered "Yes" to "I confirm that I am representing the business and the information provided in the application is true, current, complete and correct." *Id*.

Plaintiffs uploaded tax returns for 2019 (signed and dated December 2, 2021, with paid preparer); 2020 (signed and dated December 12, 2021, with no paid preparer); and 2021 (signed and dated October 12, 2022, with no paid preparer). *See id*. at 19-21. Per the guidance notation mentioned above, the application program itself would presumably have informed Plaintiffs that they did not qualify had they not uploaded these tax returns. No one indicates that any such guidance occurred—presumably because Plaintiffs uploaded a tax return for 2020 even though they had not filed it yet.

With their response to Defendants' motion to dismiss, Plaintiffs provide an unsigned 2020 business tax return (Form 1120) prepared by a paid preparer on January 13, 2023. *See* ECF No. 18-1 (Ex. B). Plaintiff Gomm declares that the 2020 return was filed on January 13, 2023; accepted by the IRS on January 14, 2023; and a correct copy is attached as Exhibit B. *See* ECF No. 18-1 ¶¶ 12-13. In addition, he declares that although the form is unsigned, his "accountant was authorized to file the 2020 tax return on behalf of DigitalDesk using form 8879-C." *Id*. ¶ 14. Although Plaintiffs provide no form 8879-C, they provide a "Preparer Electronic Filing Instructions" which states that the "return is NOT FINISHED until you complete the following instructions": (1) The taxpayer should review Form 1120 along with any accompanying schedules and statements" and (2) "The taxpayer should review, sign and date Form 8879-C and return to [preparer] prior to transmitting the tax return." *Id*. at 7. The preparer transmitted the tax return with a PIN number indicating that the preparer "must retain a signed copy of Form 8879-C." *Id*.

2

To support the allegations in their complaint, Plaintiffs attach "screenshots from Bexar County's website from July 5, 2023." *See* Compl. ¶ 10 (referring to Ex. 1). The first screenshot shows that Bexar County accepted applications between January 3 and January 20 while also stating: "Below you will find more details about this program, including eligibility, documents required, scoring methodology and timeline." *See* ECF No. 1-2 (Ex. 1) at 1. Page 2 sets out eligibility requirements for businesses, including "Gross sales in *either* 2020 or 2021 must be less than gross sales in 2019. Gross sales are based on Line 1 of Schedule C or Line 1a of 1120, 1120S or 1065." *Id*. at 2 (emphasis in original). Page 3 sets out the documents required, including "2019, 2020, and 2021 business tax returns." *Id*. at 3. The tax return requirement expressly states: "Acceptable return formats are Schedule Cs, 1120, 1120S and 1065. If 2021 business return has not been filed, other documents, such as a profit and loss statement may be requested. Applicants without a *filed* business tax return for 2019 and 2020 are not eligible." *Id*. (emphasis in original).

Page 3 also reveals that "Applications will not be considered on a first come, first served basis." *Id*. Instead, "Applications with the highest score based on the methodology below will be considered and funded first." *Id*. The "Scoring Methodology" assigns six points to businesses for three ownership categories (veterans, women, and minorities). *Id*. A business qualifying under multiple ownership categories receives six points for each qualifying category. *Id*. The methodology also awards twelve points to businesses located in specific unincorporated/suburban city environments. *Id*.

Page 4 sets out the Program's timeline: (1) a January 3 to January 20 application period in which applicants "must" submit their completed application "along with all the documentation required for verification"; (2) a January 30 to May 1, 2023 application review period when "[t]he grants team will reach out to applicants . . . if additional documents or clarification is needed" and, "[i]f additional documents are requested, applicants will have 5 business days to submit"; (3) an awards notification period from March 30 to June 30, 2023; and (4) grant disbursements from

3

April 7 through June 23, 2023. *Id*. at 4.

As a second exhibit, Plaintiffs attach an email received from "The LiftFund Grants Team" after submitting their application. *See* ECF No. 1-3 (Ex. 2). It states in pertinent part: "The application period closes on January 20 at 5:00 PM CST. All applicants will be notified by mid-February by e-mail if they were selected. If any additional information is needed to assess your application, a LiftFund team member will contact you by email or phone." *See id.* They later received the following response from LiftFund to their application:

> Thank you for your interest in the Bexar County Small Business Assistance grant program.
>
> The overwhelming response received far exceeded the available funds. The grant application review process was completed using the methodology outlined on the Bexar County Small Business Assistance Grant website in the Scoring Methodology section. At this time, all grant funds have been allocated and your business will be unable to receive funding from this program.
>
> While your business is unable to access funding from this program, other opportunities may be found in the Additional Resources section of the website, including utility assistance and other grant programs.

*See* ECF No. 1-5 (Ex. 4).

By correspondence dated May 30, 2023, counsel for Plaintiffs contacted Defendants through "a nationwide initiative" referred to as "The Equality Under the Law Project." *See* ECF No. 1-4 (Ex. 3) at 1. Counsel therein informed Defendants that their "scoring methodology is illegal and unconstitutional." *Id*. at 2.

Commencing this action on July 17, 2023, Plaintiffs sue (1) Bexar County as the political subdivision responsible for the operation and development of the Program and (2) LiftFund Inc. as the entity that administers the Program on behalf of Bexar County. *See* Compl. ¶¶ 6-7. Although Plaintiffs allege that they "provided all documents required for the application, including . . . tax returns," *see id.* ¶ 15, Defendants assert through their motion that Plaintiffs did not submit a filed 2020 tax return as required; thus, rendering Plaintiffs ineligible for any grant, Mot. at 1. They

contend that such ineligibility means that Plaintiffs "did not suffer any cognizable injury necessary to establish standing." *Id*. They further contend that Plaintiffs lack standing to seek injunctive or declaratory relief because the Program has ended. *Id*. at 2. They have submitted a declaration that the application period closed on January 20, 2023, "funds have been exhausted, and the Program is now over." ECF No. 16-1 ¶ 3. They argue that absent standing by Plaintiffs this Court lacks subject matter jurisdiction over this case. Mot. at 2.

Plaintiffs disagree with Defendants' motion. *See*, *generally*, Resp. While they never request jurisdictional discovery to bolster their position, they do contend, on three occasions, that discovery would provide an opportunity for further support for standing. *See id*. at 4, 12 n.1, 20.

In reply, Defendants argue that Plaintiffs concede that their submitted documents did not include a filed 2020 tax return. *See* Reply at 2. They maintain that Plaintiffs are ineligible for a grant and have not suffered an injury in fact as required for standing. *Id*. Should the Court not agree that standing is lacking on the current record, Defendants assert that jurisdictional discovery would be necessary to determine whether jurisdiction exists. *Id*. at 1. They ask that the Court permit such limited discovery in the alternative should the Court not be inclined to grant their motion in its entirety. *Id*. at 5.

## II. MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants seek to dismiss this case for lack of jurisdiction because Plaintiffs lack standing for any requested relief as they have suffered no injury in fact. Mot. at 4-7. With respect to requests for declaratory or injunctive relief, they also argue that standing is lacking because such remedies are not available for past wrongs and prospective relief would do nothing to redress any alleged injury. *Id*. at 5, 7-9.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies

outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). A "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Courts have "the power to dismiss for lack of subject matter jurisdiction based on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *accord Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). When determining issues of subject matter jurisdiction, the courts "may consider outside matter attached to a motion to dismiss without first converting it into a motion for summary judgment." *State of Ala. ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir. 1973).

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* When faced with a factual jurisdictional attack, "a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

For factual attacks, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself

6

the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Fed.*

*Sav. & Loan Assoc.*, 549 F.2d 884, 891 (3rd Cir. 1977)). On the other hand, a facial attack requires

the courts to "consider the allegations of the complaint as true." *Id*. "Regardless of the nature of

the attack, the plaintiff seeking a federal forum 'constantly bears the burden of proof that jurisdic-

tion does in fact exist.'" *Chandler v. United States*, 338 F. Supp. 3d 592, 599 (N.D. Tex. 2018)

(quoting *Ramming*, 281 F.3d at 161).

By submitting evidence with their motion, Defendants make a factual jurisdictional attack.

Consequently, Plaintiffs must present evidence to prove subject matter jurisdiction by a prepon-

derance of the evidence. Plaintiffs provide an affidavit with their response. *See* ECF No. 18-1.

"The three requirements of Article III standing are familiar: the plaintiffs must allege an

injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a

favorable ruling." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.

2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). While the party seeking

the federal forum bears the burden of establishing jurisdiction, including the elements of standing,

"the manner and degree of evidence required" may differ depending on the stage of litigation. *See*

*Lujan*, 504 U.S. at 561. But for a factual attack as here, the manner and degree of required evidence

remains constant throughout all stages of the litigation.

Plaintiffs assert that they satisfied all eligibility requirements listed on Defendants' web-

site. Resp. at 1. They contend that Defendants denied their application based on their scoring meth-

odology which they contend gave illegal preferences based on race and gender. *Id*. at 2. They argue

that their rejection noted no eligibility problems or failure to provide required information. *Id*.

They further argue that they were injured in two independently sufficient ways: (1) Defendants

erected a barrier that makes it more difficult for them to obtain a benefit than it is for members of

another group and (2) "Defendants' program harmed their dignity by imposing on them a 'badge

of inequality and stigmatization conferred by racial discrimination.'" *Id*. at 2-3.

Plaintiff R. Gregg Gomm provides a declaration to support Plaintiffs' opposition to Defendants' motion. *See* ECF No. 18-1. He attaches an email that he received from a list server on January 4, 2023, which prompted him to apply for a grant. *See id.* (Ex. A). That email includes a graphic from LiftFund which essentially conveys the same information from the website but does describe eligibility and required documents slightly differently. *Compare* Ex. A *with* ECF No. 1-2. Exhibit A does not indicate that a failure to provide a tax return for 2019 or 2020 will make the applicant ineligible, but it does instruct email recipients to visit the Bexar County website for more information. *See* Ex. A. In light of the perceived inconsistencies, Plaintiffs state that "[d]iscovery in this case would assist in determining the true standards applied by Defendants." Resp. at 4.

Before applying for a grant through the Program, Plaintiff Gomm "carefully reviewed" the website—particularly, the eligibility requirements, list of required documents, program timeline, and grant follow-up sections. *See* ECF No. 18-1 ¶ 5. The reviewed website reflected the eligibility requirements and list of required documents set out in Exhibit 1 to Plaintiffs' complaint. *See* Resp. at 5-6. Plaintiffs contend that they satisfy each of the eleven eligibility requirements. *Id.* at 5. They further contend that they provided "business tax returns from 2019, 2020, and 2021." *Id.* at 6.

Plaintiffs make those contentions even though Plaintiff Gomm declares that, when Plaintiffs applied, they were "in the process of finalizing [the business] tax return for the tax year 2020," which was ultimately filed on January 13, 2023. ECF No. 18-1 ¶¶ 9, 12. He concedes that he submitted an unfiled IRS Form 1120 for tax year 2020 with the January 6, 2023 application. *Id.* ¶ 10. No reasonable applicant would think that submitting an unfiled tax form equates to submitting a required tax return. This is especially true when the first page of the application clearly states that, to be eligible for a grant, applicants are required to have filed tax returns for 2019 and 2020. Furthermore, eligibility requirements based on information from a tax return naturally require verifiable information from a filed return. Unless expressly stated otherwise, eligibility required documentation does not permit an applicant to simply fill out the appropriate tax form and submit such

unfiled form as a required tax return.

Of course, as the website recognizes, there may be reason to accept financial information from sources other than a filed tax return. *See* ECF No. 1-2 at 3 (indicating that other documents may be requested if a 2021 tax return had not been filed while expressly emphasizing that eligibility for a grant required submission of filed business tax returns for both 2019 and 2020). But that does not dispense with the express eligibility requirement to have filed tax returns for 2019 and 2020. This is not an onerous requirement. The Program did not commence until January 2023, well after taxpayers generally file 2020 tax returns.

More than twenty years ago, when the Supreme Court addressed standing in a similar context, it summarized prior cases as standing

> for the following proposition: When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). The injury "is the inability to compete on an equal footing in the [application] process." *Id.*

Of course, the Supreme Court did not address the specific program at issue here. Instead, it addressed a challenge to a set-aside program—a program requiring a certain percentage of funds to be earmarked for minority businesses. *See id.* at 658. To establish standing in that context a plaintiff "need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id.* at 666. But such context differs from cases that "did not involve an allegation that some discriminatory classification prevented the plaintiff from competing on an equal footing in its quest for a benefit." *Id.* at 667-68 (distinguishing *Warth v. Seldin*, 422 U.S. 490 (1975)).

Recognizing the applicability of *Northeastern Florida*, Defendants argue that Plaintiffs were not "able and ready" because they were not eligible to participate in the program due to the lack of a filed 2020 business tax return. Mot. at 5. Defendants argue that *Northeastern Florida* does not dictate finding that Plaintiffs have standing because a race- and gender-neutral requirement rendered them ineligible when they applied. Reply at 2. Indeed, because Plaintiffs were "without a *filed* business tax return for . . . 2020" they were ineligible for a grant award when they applied on January 6, 2023. *See* ECF No. 1-2 at 3. This ineligibility has nothing to do with race or gender. No discriminatory classification prevented Plaintiffs from competing on an equal footing in their quest for a grant. It is purely the result of Plaintiffs' failure to have a filed 2020 tax return and provide it with their application. Absent eligibility, the alleged discriminatory scoring methodology does not harm or injure applicants like Plaintiffs.

To have an "injury in fact" under *Northeastern Florida*, the imposition of the barrier itself must result in the denial of equal treatment. Here, it was not the barrier itself. The barrier did not preclude Plaintiffs from applying and submitting a complete application with the eligibility-required filed tax returns. This is not a case where males or non-minorities were categorically ineligible to participate in the Program. This is not a case where Plaintiffs viewed the formal application to be a futile gesture—they submitted their application, but it had an eligibility-removing deficiency in that it lacked a filed 2020 tax return. The alleged unequal Program did not cause Plaintiffs to not apply. Plaintiffs have presented nothing beyond speculation and conjecture that Defendants treated them differently from any other applicant when they deemed Plaintiffs ineligible. That Defendants did not note such ineligibility when they informed Plaintiffs that funds were exhausted does not change the fact that Plaintiffs were ineligible from the time they submitted their deficient application through the end of the Program. Had Plaintiffs not submitted the unfiled 2020 tax return with their application, the application process itself likely would have informed them of their ineligibility status. The imposition of a race- and gender-neutral tax-filing requirement

precluded Plaintiffs' eligibility, not any discriminatory classification. Absent eligibility, one is not harmed by the Program's scoring methodology.

Plaintiffs, nevertheless, contend that they satisfied "all the eligibility requirements listed on Defendants' website." Resp. at 1, 5. While the Court has no reason to disagree as to the matters listed on page two of the website, page three clearly states that applicants are ineligible if they are without filed business tax returns for 2019 and 2020. *See* ECF No. 1-2 at 2-3. The Court accords no significance that the page 3 eligibility requirement is contained within an explanation as to what qualifies as acceptable business tax returns. The first page of the application itself reiterates the eligibility requirement of filed tax returns for 2019 and 2020. *See* ECF No. 16-1 at 5. Despite their contentions, Plaintiffs were not eligible for a grant when they filed their application.

Plaintiffs next contend that, in accepting their application, Defendants twice stated that they would "reach out . . . if additional documents or clarification is needed," but Defendants never reached out for more information or indicated that the application was deficient. Resp. at 1-2, 7. Although they make much of these failures, the program timeline makes clear that all documentation required for verification must be submitted prior to the close of the application period. The application review period did not commence until ten days after the application period closed. Consequently, if the Program's team needed "additional documents or clarification," such documents would not include requests for eligibility-granting tax returns. There is no need to obtain additional information to assess an application when the applicant is ineligible for a grant under the Program. But as noted on the website, if the applicant had not filed a 2021 business tax return, personnel might request "other documents, such as a profit or loss statement [("P&L")]." *See* ECF No. 1-2 at 3. The application itself reiterates that "additional financial documents, such as bank statements or P&L may be requested if losses cannot be verified by the tax returns." ECF No. 16-1 at 5.

Plaintiffs suggest without support that Defendants may have allowed other applicants to

supplement their applications after filing with required documentation. *See* Resp. at 12 n.1 (asserting that discovery will provide "an opportunity to determine whether Defendants imposed similar technical requirements or sought out additional documents from other applicants (and when)"). But as discussed a bit more later, they need more than mere conjecture or speculation to warrant jurisdictional discovery. And neither conjecture nor speculation is sufficient to show an injury in fact. As presented, the filed application does not show that Plaintiffs were injured by the Program. The filing of the deficient application shows that Plaintiffs were not ready to apply on equal footing with other applicants. Although they were able to apply by uploading an unfiled 2020 tax return, their eligibility-deficient application rendered them unable to compete for a grant. Every applicant regardless of the owner's race or gender was required to upload filed 2019 and 2020 tax returns to support the application. Consequently, Plaintiffs' deficient application does not provide a basis for standing.

Plaintiffs also complain that Defendant did not state eligibility as a reason for denial when they informed them that no funds were available. Resp. at 2. They argue that Defendants' entire argument for lack of standing rests on a post-hoc review of the submitted application. *Id*. at 2, 8. They characterize the arguments of Defendants as belated and "a desperate attempt to evade the core constitutional issue on an immaterial technicality." *Id*. at 2. Neutral eligibility requirements, however, are not immaterial technicalities. And the requirement for having filed tax returns for both 2019 and 2020 is neither gender- nor race-based. The requirement is not based on any discriminatory classification. There is no discriminatory aspect from requiring filed business tax returns to be eligible for a grant from the Program.

Plaintiffs further complain that Defendants' declarant stated that a "stated" return is sometimes acceptable and sometimes not. *Id*. at 8. But what the declarant actually stated was: "Plaintiffs submitted what appear to be 'stated' tax returns for 2020 and 2021. Although a stated return is acceptable for tax year 2021, it is not for 2020 under the Program criteria found on the Program

website." ECF No. 16-1 at 2. While Plaintiffs suggest that the term "stated" is undefined, the relevant point is that a stated return does not equate to a filed return as required for 2020 required tax return. The declarant made that clear by referencing the website, which specifically recognizes that applicants may support their application with other documents when an applicant lacks a 2021 filed taxed return. *See* ECF No. 1-2 at 3.

Furthermore, although the declarant—an Operations Manager for LiftFund who "oversaw the review of applications"—states that she "recently reviewed Plaintiffs' application materials and determined that Plaintiffs would not be eligible for a grant under the Program because it [was her] assessment that they did not provide [a] filed tax return for 2020," *see* ECF No. 16-1 ¶¶ 2, 6, the Court sees nothing unusual from such managerial review. That the manager recently reviewed the application simply appears to reflect a routine review after litigation has commenced. It does not exhibit any wrongdoing or discrimination. The manager found indications to conclude that the submitted information for 2020 was not a filed tax return and that Plaintiffs were accordingly ineligible for a grant. Plaintiffs quibble about the indications, i.e., font, etc., but then concede that they had not filed a 2020 business tax return before they applied. Furthermore, comparing the submitted 2020 tax return, ECF No. 16-1, with the return filed with the IRS after Plaintiffs applied for a grant, ECF No. 18-1, shows significant and material changes. *See* Reply at 6 (listing inconsistencies). The failure to submit an eligibility-required filed tax return is not a minor issue that would be fixed through a request to provide additional information or documentation.

Plaintiffs maintain that under *Northeastern Florida* they "need only show that they were 'able and ready' to apply to a program that had a discriminatory barrier," and that they were able and ready because they met all eleven eligibility requirements. Resp. at 11-12. But as already addressed, the Program also required, as an eligibility requirement, that applicants have filed tax returns for both 2019 and 2020. Under their own argument, they were not able and ready when they filed their eligibility-deficient application. Defendants do not blur the distinction between

eligibility requirements and documents needed for verification. The Program itself imposes, as an eligibility requirement, that applicants have filed 2019 and 2020 tax returns.

Plaintiffs also assert that their dignity was injured. *See* Resp. at 16-18. As discussed above, Plaintiffs were ineligible for a grant based on a non-discriminatory requirement applicable to all applicants. Despite their allegations, they were not denied equal treatment solely because of any membership in a disfavored group. They failed to comply with an express eligibility requirement as stated on the relevant website and on the application itself.

Notably, Plaintiffs appear to have filed a 2020 business tax return the week after their grant application. While there may be questions as to its lack of signature and the absence of a related Form 8879-C, the paid preparer did transmit the return and it was accepted on January 14, 2023. For purposes of the instant motion to dismiss, the Court will consider the return as being filed as required by the Program. Nevertheless, at no point do Plaintiffs argue that this filing cured any eligibility deficiency or otherwise provides a basis for standing. They do not argue that this filing made them ready and able to apply. Indeed, they contend that they were ready and able when they had filed their application a week earlier.

No one disputes that the website states: "Applicants without a *filed* business tax return for 2019 and 2020 are not eligible." Plaintiffs simply want to ignore that because the requirement is not listed under the eligibility heading. But even under the listed heading, eligibility is dependent on financial information from submitted tax returns. The list of required documents makes it clear that filed business tax returns is an eligibility requirement except as to returns for 2021. Moreover, the application itself states the same eligibility requirement.

What is less clear is when those returns had to be filed. One can reasonably interpret the requirement as requiring them to be filed no later than the date the Program commenced on January 3, 2023. In other words, applicants must possess such filed business returns at the point the program commenced. The brevity of the application process—January 3 through January 20, 2023—

provides little reason to extend the filing requirement into the application period. Of course, no one disputes that Plaintiffs were without a filed 2020 business tax return when the Program commenced. And even if the Program simply required applicants to have the required filed tax returns before applying, Plaintiffs failed in that regard as well. Given the application process and the need to upload specific required documents, including the eligibility-providing filed tax returns, the Program is tailored to require applicants to have filed tax returns no later than when they apply. Plaintiffs jumped the gun and applied before they had filed their 2020 return.

But perhaps the filing requirement permits an applicant to file a needed tax return during the application period. That is what happened here. Plaintiffs, however, did not wait to apply until they had the required filed tax returns. Nor did they make any known attempt to update their then pending application. Still, Plaintiffs suggest, while not arguing, that their post-application tax return filing has some relevancy. They also specifically argue that they can be harmed without even applying for a grant. *See* Resp. at 18 n.2 (citing cases). Plaintiffs' suggestion and this specific argument have some interrelationship.

Defendants contend that *Northeastern Florida* and its progeny do not support Plaintiffs' position that they had no need to apply. Reply at 4. They further contend that "[t]he logic in [the cited] cases is that a plaintiff can be excused from applying to a program where a race-based [(or other similar)] preference precludes them from receiving a grant or contract even if they had submitted a complete application." *Id*. at 4 & n.2. Although Defendants accept that logic, they submit that Plaintiffs make no allegation that the Program was closed to any race or gender or that any race- or gender-conscious policies prevented Plaintiffs from applying. *Id*. at 4-5.

While not argued by Plaintiffs, the Court considers whether the post-application tax filing provides a basis for standing when they made no attempt to update their application after they made the required tax filing. Critical to this inquiry is whether Plaintiffs have "established that, at the time [they] filed suit," the grant program "caused [them] a concrete, particularized 'injury in

fact.'" *Carney v. Adams*, 592 U.S. 53, 59 (2020). "To show a harm based on an allegedly unconstitutional application process, a plaintiff 'must at least show that he is likely to apply . . . in the reasonably foreseeable future' if the state actor were not unconstitutionally barring him from the fruits of the application process." *Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 646 (N.D. Tex. 2021) (quoting *Carney*, 592 U.S. at 60). And plaintiffs "can show this only if [they are] able and ready to apply." *Carney*, 592 U.S. at 60 (citations and internal quotation marks omitted). Plaintiffs have "the burden of establishing standing as of the time [they] brought this lawsuit and maintaining it thereafter." *Id*. at 59.

Plaintiffs filed this case based upon their allegation that the Program "funded and operated by Defendants, 'picks winners and losers based on the color of their skin.'" Compl. ¶ 1 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 229 (2023)). But that is not a fair depiction of the facts with respect to Plaintiffs themselves. This is so because Plaintiffs concededly submitted a deficient application—an application which rendered them ineligible for a grant award irrespective of the scoring methodology that provided additional points for businesses with female and/or minority owners. They have conceded that their application lacked a filed 2020 business tax return. The website that Plaintiff Gomm thoroughly reviewed in January 2023 undeniably states that a failure to provide such required documentation would make the applicant not eligible. The website unambiguously required applicants to have a filed tax return for both 2019 and 2020 or they were not eligible under the Program. The application that Plaintiffs completed even reiterated this unambiguous eligibility requirement. This requirement is neither race- nor gender-based. It applies equally to all applicants.

By submitting their application, Plaintiffs effectively show that there was no barrier to them applying. The material deficiency of their application rendered them ineligible. Submitting a "materially deficient" application indicates an inability "to compete equally" with other applicants. *Carroll v. Nakatani*, 342 F.3d 934, 942 (9th Cir. 2003). Filing their 2020 business tax return after

submitting a deficient grant application might indicate an intent to update their application, but if it does, it also indicates an understanding that the original application was deficient. At that point, one might find them ready to apply. And they were able to apply as exhibited by their already filed deficient application. But they did nothing after filing their deficient application to demonstrate that they were ready to apply or that they were in a position to compete equally with other applicants. Their submitted application still lacked a filed 2020 tax return. These failures remove Plaintiffs from the scope of applicants possessing standing to challenge the Program.

Plaintiffs' inaction during the application period did not reflect any likelihood to apply in the reasonably foreseeable future, and the passing of the application period ended any such likelihood. Because the application period has passed and the grant program has ended, Plaintiffs are limited to their deficient submission which rendered them ineligible and thus without standing to challenge the program. They cannot at this time avail themselves of the option to show that they are likely to apply in the reasonably foreseeable future.

Thus, while Plaintiffs arguably may have become ready once they filed their 2020 return on January 13, 2023, they did nothing to combine that readiness with their already existing ability to apply. They have presented nothing to show that they were prevented from filing another application within the application period or even updating their application with new documentation. And even if they were somehow prohibited by the application process, any such prohibition is not based on any discriminatory classification. Regardless, Plaintiffs simply took no steps to update their application or to apply again with the eligibility-providing 2020 tax return. Further, by the time Plaintiffs commenced this action on July 17, 2023, the application process had ended, and as Plaintiffs were informed, all funds had been exhausted. Thus, at the time Plaintiffs commenced this action, there was no likelihood that they would apply in the reasonably foreseeable future. The Program had ended. Although Plaintiffs speculate that Defendants may reopen the Program in an effort to claw back funds spent unlawfully or on a prohibited activity, *see* Resp. at 19, such

speculative reopening is not sufficient to establish standing. And as discussed more in a bit, it is not enough to warrant jurisdictional discovery.

Plaintiffs argue that they have presented a sufficient injury because their injury "need not measure more than an 'identifiable trifle.'" Resp. at 9 (quoting *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)). But while an injury need not be large, there absolutely must be an identifiable injury. And Plaintiffs simply have not shown such an injury. They were not injured by the consideration given to their application because its deficiency rendered them ineligible for a grant under the Program. After they filed a 2020 business tax return, they showed no likelihood that they would apply in the reasonably foreseeable future. They took no steps to correct the eligibility-eliminating deficiency by updating their application and by the time they filed this litigation the Program had ended. The Program's termination ended any reasonable likelihood of any future injury, thereby foreclosing the requested declaratory and injunctive relief (as discussed next), as well as eliminating the prospect of any likelihood that Plaintiffs would apply with an application that did not render them ineligible from the outset.

The preceding discussion leads nicely into Plaintiffs' requests for injunctive and declaratory relief. Such requests "implicate the intersection of the redressability and injury-in-fact requirements." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Because such "relief cannot conceivably remedy any past wrong, plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Id.* (footnotes, citations, and internal quotation marks omitted). And as the Supreme Court has stated, an "[a]bstract injury is not enough"; plaintiffs must show that they have "sustained or is immediately in danger of sustaining some direct injury" resulting from the challenged conduct or program "and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (citations and internal quotation marks omitted). When "a plaintiff is seeking injunctive or declaratory relief," there must

be "a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

In this case, Plaintiffs have shown no substantial likelihood that they will suffer an injury from the Program in the future. Because the Program has ended, Plaintiffs lack standing to request prospective relief. They are suffering no continuing harm and there is no substantial likelihood that they will suffer any injury in the future.

For all of these reasons, Plaintiffs have not carried their burden to show by a preponderance of the evidence that they have standing to pursue any aspect of this litigation. They point out differences between the email received in January 2023 and the website, but those differences are not sufficient to carry their burden. The website and the application itself clearly informed all applicants that they were ineligible for a grant under the Program if they were without filed 2019 and 2020 business tax returns. Having considered all presented evidence and arguments, the Court is unable to find that Plaintiffs have standing in this case.

Although Plaintiffs mention discovery as a basis for providing additional support for finding that they have standing, they do not request jurisdictional discovery. Defendants seek such discovery, but only in the alternative if the Court is not satisfied that Plaintiffs lack standing in this case. In these circumstances, the Court could easily find no reason to address whether it should permit jurisdictional discovery before dismissing this case for lack of jurisdiction. After all, parties seeking jurisdictional discovery must make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing that is lacking here.

Nevertheless, it appears prudent to briefly address the issue of jurisdictional discovery. Courts have vast discretion in discovery matters, including whether to permit limited jurisdictional discovery. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006). For instance, "some jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns

on a disputed fact." *Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449, 457 (5th Cir. 2012). "The party seeking discovery bears the burden of showing its necessity." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). In general, parties meet this burden by alleging "the specific facts crucial to" the jurisdictional question, "which demonstrate[] a need for discovery." *Id.* at 342. But parties are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id.*

"Jurisdictional discovery places an undue and unnecessary burden on the parties when the proponent of such discovery only supports the request by conjecture, speculation, or suggestion." *Pharos Cap. Grp., LLC v. Nutmeg Ins. Co.*, 999 F. Supp. 2d 947, 960 (N.D. Tex. 2014) (quoting *NL Indus. v. OneBeacon*, 435 F.Supp.2d 558, 562 (N.D. Tex. 2006)). Courts do not abuse their discretion when they deny jurisdictional discovery that is requested on speculation "without any factual basis." *Barber v. United States*, 642 F. App'x 411, 415 (5th Cir. 2016) (per curiam).

Although Plaintiffs try to paint a picture of a factual dispute as to whether a filed tax return was an eligibility requirement, the website clearly shows that applicants are rendered ineligible if they do not submit filed tax returns. The submitted application itself reiterates that eligibility requirement. The email received by Plaintiffs does not create a factual dispute because it directs recipients to the website for additional information. The website and not the email sets out the requirements of the Program. And once Plaintiffs started their application, the application again informed them that filed 2019 and 2020 tax returns were required for applicants to be eligible. Plaintiffs provide nothing beyond speculation that the requirement for filed tax returns did not affect their eligibility for a grant. Similarly, they hypothesize that discovery may show that Defendants provided other applicants an opportunity to correct deficient applications. Such hypothesis is mere conjecture or speculation that is insufficient to justify jurisdictional discovery.

### III. CONCLUSION

For the foregoing reasons the Court **GRANTS** the Motion to Dismiss (ECF No. 16) filed by Defendants. Because Plaintiffs have not carried their burden to show that they have standing to pursue any aspect of this litigation, the Court finds that it lacks jurisdiction. By separate filing, it will issue a Final Judgment dismissing this case for lack of jurisdiction.

**IT is so ORDERED.**

**SIGNED this 23rd day of May 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

21